IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FUJIAN MINGTA TOYS CO. LTD.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",**<br><br>*Defendants*. | **Civil Action No. 1:24-cv-05625** |

**PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND OTHER RELIEF**

Plaintiff Fujian Mingta Toys Co. Ltd. ("Mingta" or Plaintiff) respectfully moves for a temporary restraining order ("TRO"), including a temporary injunction, a temporary asset restraint, expedited discovery, and foreign alternative service ("Motion").

**I.      INTRODUCTION**

Plaintiff is requesting temporary *ex parte* relief based on an action for design patent and copyright infringement against the Partnerships and Unincorporated Associations identified in Schedule A of the Complaint (collectively, "Defendants"). As shown in Exhibits 1-1 to 1-5 of the Complaint (Dkt. Nos. 2-2 to 2-6), Defendants are offering for sale and selling unlicensed products ("Infringing Products") that infringe Plaintiff's patented design and copyrighted artwork through various fully interactive, Internet storefronts identified in Schedule A ("Defendant Internet Stores").

Defendants are reaching out to do business with Illinois residents by operating the Defendant Internet Stores through which Illinois residents can purchase Infringing Products. *See* Dkt. No. 2-7. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them. Further, Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their infringement operation. Plaintiff was forced to file this action to combat Defendants' infringement of its patented design and copyrighted artwork, as well as to protect unknowing customers from purchasing inferior Infringing Products over the internet. Therefore, Defendants' ongoing unlawful activities should be restrained via an *ex parte* TRO.

**II.     STATEMENT OF FACTS**

    **A.     Plaintiff's Products, Patented Design and Copyrighted Artwork**

Plaintiff is the named applicant of the United States Design Patent identified in Exhibit 3 of the Complaint (Dkt. No. 2-8) ("Design Patent") and the owner of the United States Copyright identified in Exhibit 4 of the Complaint (Dkt. No. 2-9) ("Copyright"). Plaintiff sells authorized products on the Amazon marketplace under the trademarked brand name Zhiwuzhu® which

embodies and practices the Design Patent and the Copyright. Declaration of Hengjie Chen ("Chen Decl.") at ¶ 4. The Zhiwuzhu® branded product is well established on Amazon and enjoys quality customer reviews and high ratings, earning 4.5 stars out of 5 on over 800 reviews. *Id*. Customer reviews of Plaintiff's listing regularly praise its appearance, design concept, value, quality, style, and size. *Id*. Plaintiff has not licensed or authorized Defendants to practice the Design Patent or the Copyright, and none of the Defendants are authorized resellers of licensed products. *Id.* at ¶ 9.

### B. Defendants' Infringing Activities

Defendants are an interrelated group of infringers working in active concert to make, use, offer for sale, sell, and/or import into the United States for subsequent sale products that directly infringe the Design Patent and the Copyright in the same transaction, occurrence, or series of transactions or occurrences. Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores, the Infringing Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are interrelated and that the Infringing Products are at the very least commonly sourced.

In response to the success of Plaintiff's Zhiwuzhu branded product, there has been an increase in copy-cat products, like the Infringing Products, offered for sale on Amazon, Walmart, and Temu. Due to the low, market penetrating price point of the Infringing Products, Plaintiff has continuously lost market share. Chen Decl. at ¶¶ 5-6.

## III. ARGUMENT

Defendants' infringing conduct is causing and will continue to cause irreparable harm to Plaintiff's intellectual property rights and associated reputation. Rule 65(b) provides that a court

may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Here, the entry of an *ex parte* TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Design Patent and the Copyright and preserve the *status quo* until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the jurisdiction of the Court. Numerous district courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infirming merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully request that this Court issue an *ex parte* TRO.

A. **Jurisdiction and Venue**

As a preliminary matter, this Court has original subject matter jurisdiction over the claims in this action pursuant to 35 U.S.C. § 1, *et seq.*, 17 U.S.C. § 101 *et seq.*, 28 U.S.C. §§ 1331 and 1338. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating the Defendant Internet Stores through which Illinois residents can purchase products embodying the Design Patent and the Copyright. Dkt. No. 2-7; *see, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6

may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Here, the entry of an *ex parte* TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Design Patent and the Copyright and preserve the *status quo* until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the jurisdiction of the Court. Numerous district courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infirming merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully request that this Court issue an *ex parte* TRO.

A. **Jurisdiction and Venue**

As a preliminary matter, this Court has original subject matter jurisdiction over the claims in this action pursuant to 35 U.S.C. § 1, *et seq.*, 17 U.S.C. § 101 *et seq.*, 28 U.S.C. §§ 1331 and 1338. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating the Defendant Internet Stores through which Illinois residents can purchase products embodying the Design Patent and the Copyright. Dkt. No. 2-7; *see, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6

(N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 904 (N.D. Ill. 2015) ("[D]efendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction over both defendants in this court."). Moreover, the Defendants are committing tortious acts in Illinois, engaging in interstate commerce, and wrongfully causing Plaintiff substantial injury in Illinois.

B. **Applicable Law**

Rule 65(b) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if... specifcs facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).

The courts have a long history of remedying the trespass on property rights, including patent rights, by removing the trespasser. *See, e.g., Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012). This history of removal stems from a constitutional and statutory grant to exclude others from one's property. U.S. Const. art. I, § 8, cl. 8 ("by securing for limited times to... inventors the *exclusive right* to their respective... discoveries") (emphasis added); 35 U.S.C. § 154(a)(1) ("Every patent shall contain... a grant to the patentee... of the *right to exclude others* from making, using, offering for sale, or selling the invention...") (emphasis added).

A party seeking an *ex parte* restraining order must show: "(1) a likelihood that it will prevail on the merits of the lawsuit, (2) that it will suffer irreparable harm without injunctive relief, and (3) that there is no adequate remedy at law." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *4 (N.D. Ill. Mar. 27, 2013) (*citing Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005)). "If these requirements are met, the court must then balance the degree of irreparable harm to the plaintiff against the harm that the defendant will suffer if the injunction is granted." *Deckers*, 2013 U.S. Dist. LEXIS 47248 at *4 (*citing Incredible* Techs., 400 F.3d at 1011*))*; *see also Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998). "The court must apply a sliding scale approach in determining whether to issue a temporary restraining order - the more likely the Plaintiff will succeed on the merits, the less the balance of irreparable harms needs to be to favor the plaintiff's position." *Decker*, 2013 U.S. Dist. LEXIS 47248 at *4 (*citing TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "Lastly, the court must consider the public interest (non-parties) in denying or granting the injunction." *Decker*, 2013 U.S. Dist. LEXIS 47248 at *4. Finally, courts in this District have held that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted." *Columbia Pictures Indus. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996).

    **C.**    **Plaintiff Will Likely Succeed on the Merits of at least the Design Patent Infringement Claim**

Plaintiff focuses on the design patent infringement claim here because "a chance of success on just one count will fulfill the requirement of showing a likelihood of success on the merits." *Sir Speedy, Inc. v. Matye*, No. 98 C 3762, 1998 U.S. Dist. LEXIS 11248, *12 (N.D. Ill. 1998). The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or

sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Here, Plaintiff has shown a *prima facie* case of design patent infringement. Plaintiff is the named applicant of the Design Patent. Dkt. No. 2-8. As alleged in the Complaint, Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale products that directly infringe the Design Patent. *See* Dkt. No. 2-2 to 2-6.

As shown in the exemplary infringement chart attached as Exhibit 1, the Infringing Products sold on the Defendants Internet Stores are so substantially similar to the patented design such that an ordinary observer would be deceived into thinking that the design of the Infringing Products is the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). The patented design is characterized by a flat, square shaped maze toy filled with internal channels for a number of small balls corresponding with one to ten numbers, just like the Infringing Products. Further, Defendants' products are not licensed or authorized in any way. Chen Decl. at ¶ 9. Accordingly, Plaintiff has established a *prima facie* case of design patent infringement, and, therefore, a strong showing of success on the merits of the design patent infringement claim.

### D. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief and There Is No Adequate Remedy at Law

In the context of infringement of a design patent, irreparable harm occurs when the "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011). Here, Plaintiff need only show that irreparable harm is likely in order for an injunction to issue. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Courts tend to grant injunctive relief to patentees who compete directly with the infringer or have lost market share to the infringer. "Head-to-head competition and lost market share tend to evidence irreparable harm." *TEK Glob., S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 793 (Fed. Cir. 2019), citing *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337-38 (Fed. Cir. 2013) (competition and lost market share established irreparable harm – even where patent owner did not practice the patented invention) and *Robert Bosch LLC,* 659 F.3d at 1151 (concluding that district court erred in not finding irreparable harm when parties were direct competitors and patentee showed lost market share, even though infringement only affected patentee's "non-core" business).

In this case, in the absence of an injunction, Plaintiff will continue to suffer irreparable harm due to direct competition with the Infringing Products, loss of market share, and price erosion. For example, Plaintiff and Defendants both sell the same product through the same sales channels, namely Internet marketplaces like Amazon and TEMU, to reach the same consumers in the United States. This direct competition flies in the face of Plaintiff's design patent rights and has directly caused a loss of market share. For example, between the months of July 2023 to November 2023, Plaintiff's listing sold at least 34,558 units at a price of $25.99 per unit, with average daily sales of at least 300 units. From January 2024 to June 2024, the same listing merely sold about 19,454 units, with average daily sales dropping to about 100 units. That is a 43.7% decrease in sales within half a year. Chen Decl. at ¶ 6. Over that time period, Defendants entered the market at a lower price point in an effort to quickly increase sales and market share. For example, one listing of Infringing Products has a price of $9.49 per unit while another listing has a price of $9.99 per unit. *Id*. at ¶ 7. To remain competitive in the market, Plaintiff has been forced

to lower prices over time. For example, in 2023, Plaintiff's price point was $25.99; today the price is set at $23.99. *Id.*

In *TEK Global*, the Court of Appeals upheld the district court's decision to permanently enjoin the defendant's infringement in part because the parties were competing for the same customers in the same market, the defendant won business over the plaintiff, and the plaintiff was susceptible to lowered market share due to this loss of business. 920 F.3d at 793. Similarly, in *i4i Ltd. P'ship v. Microsoft Corp.*, the Court of Appeals upheld the district court's conclusion that the plaintiff was irreparably injured by the defendant's infringement based on its factual findings that the parties were direct competitors in the market, and that the plaintiff lost market share as a result of the infringing products. 598 F.3d 831, 861 (Fed. Cir. 2010). Here, similar direct competition has led to a loss of Plaintiff's market share and subsequent price erosion. As articulated in *Aria Diagnostics, Inc. v. Sequenom, Inc.*: "Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." 726 F.3d 1296, 1304 (Fed. Cir. 2013). Further, the inherent difficulty of quantifying "loss of market share, brand recognition, and customer goodwill as the result of the defendant's infringing acts" and of estimating monetary damages indicates that "remedies at law are inadequate." *i4i*, 598 F.3d at 862;

Moreover, in the absence of an injunction, Defendants' infringement of the Design Patent is likely to cause customer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of customer goodwill. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558

(Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm). Here, the evidence tends to show that Defendants' copy-cat products are inferior to Plaintiff's genuine products. For example, Plaintiff's product listing enjoys a 4.5 out of 5 star customer rating on nearly 500 reviews. Chen Decl. at ¶ 5. Plaintiff's listing has earned the coveted "Amazon's Choice" badge for highly rated, well-priced products available to ship immediately. *Id*. Customer reviews of Plaintiff's product regularly praise its appearance, design concept, value, quality, style, and size. *Id.* In comparison, Defendants' listings are littered with poor customer reviews that highlight the inferior quality of the Infringing Products. *See* Exhibit 2 (collecting customer reviews of the Infringing Products).

A causal nexus exists between Defendants' infringement and the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the Design Patent in the Infringing Products is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products"). Here, the patented design and shape of the maze toy is the driving force behind the consumer demand.

Further, given that Defendants are business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no presence in the United States, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon*

*Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"); *ABC Prods. v. Individuals Corps., LLCs, P'ships, & Unincorporated Ass'ns Identified on the Attached Schedule A*, No. 23 C 4131, 2024 U.S. Dist. LEXIS 67662, 2024 WL 1549784, at *5 (N.D. Ill. Jan. 9, 2024) ("Defendants are located in foreign countries and sell their infringing products through online marketplaces, granting them a certain level of anonymity. Thus, ABC Products' ability to collect damages through later legal remedies is bleak, at best. This factor also weighs in favor of injunctive relief." (internal quotation marks and citation omitted)). For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued.

### E. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of an Injunction

As infringers, Defendants are entitled to little equitable consideration as any harm to Defendants possibly resulting from a temporary restraint is self-inflicted. Defendants undertook a calculated risk when they engaged in design patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent"). In fact, courts have found that there is no countervailing harm to Defendants from an order directing them to stop the unlawful sale or products infringing on Plaintiff's patented design. *Volkswagen AG v. iman365-usa*, 2020 U.S. Dist. LEXIS 34218, 2020

WL 977969, at *8 (N.D. Ill. Feb. 28, 2020) ("[E]njoining the Defendant[s] from violating the law cannot, by its very nature, cause the Defendant[s] any harm.").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Plaintiff has granted a license to Defendants with respect to the Design Patent. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. Further, the public interest is served by an injunction that protects Plaintiff's intellectual property rights. *John Mezzalingua Assocs., Inc. v. Arris Int'l, Inc.*, 298 F. Supp. 2d 813, 822 (N.D. Ill. 2003) ("The public interest is served by enforcing the rights of persons who have been issued patents by the United States government."). As such, equity requires that Defendants be ordered to preliminary cease their unlawful conduct.

### IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In relief, Plaintiff seeks to enjoin Defendants from making, using, selling, or offering for sale the Infringing Products and any other products which infringe upon Plaintiff's patented design. Furthermore, Plaintiff seeks a temporary asset freeze in order to ensure the availability of permanent relief given the likelihood that Defendants will simply transfer their assets in an attempt to evade any judgment against them entered by this Court. Foreign infringers regularly transfer ill-gotten funds out of the jurisdiction of United States courts once notice of a lawsuit is received. Such relief has been found wholly appropriate in similar cases by Courts in this District. *See, e.g., Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (Dow, J.) (granting *ex parte* application for temporary restraining order including the transfer of domain names, freezing of Defendants' financial accounts, and service of process by electronic publication and electronic

mail); *True Religion Apparel, Inc. v. Does 1-100*, No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (Coleman, J.) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-9066 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Coach, Inc., et al v. Does 1-100*, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Tory Burch LLC v. Does 1-100*, No. 12-cv-07163 (N.D. Ill. Sep. 14, 2012) (Lee, J.) (same); *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *25-26 (N.D. Ill. Mar. 27, 2013) (same).

The freezing of assets "is also appropriate in this case because Defendants may otherwise transfer their financial assets to overseas accounts, thereby depriving the plaintiff of final relief." *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("[B]ecause the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [the defendant's] assets in order to ensure the availability of that final relief."); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze is appropriate and may remain in place pending final disposition of this case."). Here, Plaintiff seeks equitable relief in the form of an accounting of profits under 35 U.S.C. § 289. Without an asset seizure in place, Defendants are likely to simply disappear into the night, leaving Plaintiff and this Court powerless to redress their unlawful acts.

### A. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendant's profits from the sale of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its design patent infringement claim, so according to 35 U.S.C. § 289, Plaintiff is entitled to recover "the extent of [Defendants'] total profit." Plaintiff seeks, among other relief, that Defendants account for and pay all profits realized Defendants' unlawful acts. Dkt. No. 1 at ¶ 23. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve equitable relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co.* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a

disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.* Such is the case here.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### B. Plaintiff is Entitled to Expedited Discovery

In addition, Plaintiff seeks expedited discovery on the financial systems and payment accounts Defendants use in their infringement operation, along with sales data to determine profits and contact information. The purpose is to identify any additional financial accounts used by Defendants in order to freeze any assets therein to halt Defendants' infringement activities. "Federal Rule of Civil Procedure 26(d) explains that parties may generally serve discovery only after a Rule 26(f) conference, 'except... when authorized by... court order.' To determine whether to authorize expedited discovery in a particular case, courts generally apply a "good cause" standard." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *28 (N.D. Ill. Mar. 27, 2013), citing Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). In this case, much like as was the case in *Deckers*, "there is good cause to allow for expedited discovery." *Id.* at *28-29. "Because the Defendants in this case are located overseas and have gone to great lengths to conceal their identities and avoid detection, it is likely that this Court's restraining order would be of little value if Plaintiff is unable to discover the Defendants' bank accounts and serve the financial institutions maintaining those accounts." *Id.* In light of this, Plaintiff respectfully requests expedited discovery related to the financial accounts and payment

systems used by Defendants in conjunction with the sale of the Infringing Products. This discovery is essential to preventing further harm to Plaintiff and is narrowly tailored to ensure such. Plaintiff's requested asset restraint would be entirely without purpose without the ability to first discover those very same accounts. As such, Plaintiff respectfully request that it be allowed to conduct limited expedited discovery related to Defendants financial accounts, sales, and contact information.

### C. Service of Process by Email is Warranted

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff also requests alternative service of process by electronic mail. First, service of process by email is warranted since the Defendants are likely located in China and have no apparent presence in the United States. Nevertheless, United States district courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g., In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("Plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Securities Litigation*, No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority).

More importantly, the process of serving Defendants with the relevant documents by international postal mail (through the Hague Convention) would likely take a minimum of several months. If the Court grants Plaintiff's request for a TRO, the order would only remain in effect for a maximum of 14 days, and the hearing on the preliminary injunction must occur "at the earliest possible time" prior to the expiration of the temporary restraining order. Fed. R. Civ. P. 65(b) ("The order expires at the time after entry–not to exceed 14 days–that the court sets, unless before

that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.").

Secondly, service of process by email for Defendants is appropriate and necessary because Defendants, on information and belief: (1) rely primarily on electronic communications to communicate with its customers, demonstrating the readability of this method of communication, and (2) Plaintiff is unable to determine the exact physical whereabouts or identities of Defendants. *See, e.g., Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n, No*. 13 C 9807, 2013 U.S. Dist. LEXIS 47248, at *27 (N.D. Ill. Mar. 27, 2013) (finding service by email and electronic publication appropriate under similar circumstances). As such, Plaintiff respectfully requests to serve Defendants via email. Plaintiff expects to obtain the email addresses from TEMU and Amazon with the discovery requested above.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong nature of Plaintiff's evidence of design patent infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than ten thousand dollars ($10,000.00 USD).

## VI. CONCLUSION

Defendants' operations are irreparably harming Plaintiff's business, established brand, and consumers. Without entry of the requested relief, Defendants' infringement of the Design Patent in connection with the making, using, offering to sell, selling, or importing of the Infringing Products will continue to irreparably harm Plaintiff. Therefore, entry of an *ex parte* TRO is necessary.

DATED: July 4, 2024                                             Respectfully submitted,

By: */s/ Nicholas Najera*

Nicholas Najera
Texas Bar No. 24127049
nnajera@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 325-2220
Fax: (972) 314-0900

*COUNSEL FOR PLAINTIFF*