IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJIAN MINGTA TOYS CO. LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> *Defendants*. | Civil Action No. 1:24-cv-05625 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Fujian Mingta Toys Co. Ltd. ("Plaintiff") files this Memorandum of Law in support of its motion for preliminary injunction ("PI Motion").

## I. INTRODUCTION

Plaintiff respectfully moves to convert the Sealed Temporary Restraining Order ("TRO") (Dkt. No. 11) to a preliminary injunction thereby enjoining the Defendants identified on Appendix A (collectively, "Defendants") from further infringing United States Design Patent No. D1,019,805 ("Design Patent"). As alleged in the Complaint, Defendants are offering for sale and selling infringing and unlicensed products, namely magnetic counting maze toys ("Infringing Products"), through various fully-interactive internet storefronts.

## II. STATEMENT OF FACTS

Plaintiff brought this action against Defendants for infringement of the Design Patent. Dkt. No. 1. Plaintiff is the named applicant of the Design Patent, which claims the ornamental design for a toy, as shown and described. Dkt. No. 2-8.

Plaintiff sells products on the Amazon marketplace under the trademarked brand name Zhiwuzhu® which embodies and practices the Design Patent. Dkt. No. 5-3 at ¶ 4. The Zhiwuzhu® branded product is well established on Amazon and enjoys quality customer reviews and high ratings, earning 4.5 stars out of 5 on over 800 reviews. *Id*. Customer reviews of Plaintiff's listing regularly praise its appearance, design concept, value, quality, style, and size. *Id*. Plaintiff has not licensed or authorized Defendants to practice the Design Patent, and none of the Defendants are authorized resellers of licensed products. *Id.* at ¶ 9.

## III.    PROCEDURAL HISTORY

On December 10, 2024, the Court entered the TRO against Defendants. Dkt. No. 11. On December 20, 2024, the TRO was extended for good cause until January 7, 2025. Dkt. No. 16. The TRO authorized Plaintiff to provide notice of these proceedings to Defendants by sending an email to the email addresses provided by Defendants to Amazon, Walmart, and TEMU. Dkt. No. 11 at ¶ 6. Pursuant to the terms of the TRO, Plaintiff served the TRO on Amazon, Walmart, and TEMU to restrain accounts and identify the email addresses associated with Defendants' internet storefronts. In due course, Plaintiff then served the Summons, Complaint, and TRO on Defendants via email on December 27, 2024. Dkt. No. 19.

## IV.    LEGAL STANDARD

The Patent Act specifically authorizes courts to grant injunctions to prevent violation of Patent rights: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by Patent, on such terms as the court deems reasonable." 28 U.S.C. § 283.

A preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the

order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiff's favor; and (4) the public interest will not be disserved by the injunction." *Colombia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996). The standard for granting a temporary restraining order and a preliminary injunction are the same.

## V.    ARGUMENT

Plaintiff moves to convert the TRO to a preliminary injunction, thereby enjoining Defendants from making, using, offering for sale, selling, and/or importing the Infringing Products during the pendency of this litigation, along with a continued asset freeze.

### A.    Converting the TRO to a Preliminary Injunction is Warranted

First and foremost, the PI Motion should be granted due to at least the fact that this Court already granted a TRO, and the standard for granting a TRO and the standard for granting a preliminary injunction are the same. Moreover, here, the requirements to convert the TRO to a preliminary injunction have been satisfied. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted).

#### i.    *Jurisdiction is proper in this Court.*

This Court has original subject matter jurisdiction over the claims in this action pursuant to the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Amazon storefronts. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant internet storefronts through which Illinois residents can purchase Infringing Products. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225,

at *6 (N.D. Ill. Nov. 17, 2015) (finding personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront). Defendants are committing tortious acts in Illinois, engaging in interstate commerce, and wrongfully causing Plaintiff substantial injury in the State of Illinois.

    ii. *Plaintiff has demonstrated a reasonable likelihood of success on the merits.*

A party seeking a preliminary injunction must demonstrate "that it has a better than negligible chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). This is an "admittedly low requirement." *Id.*

Here, Plaintiff more than meets this threshold inquiry by establishing a *prima facie* case of patent infringement. First, Plaintiff is the owner of the Design Patent and holds all rights therein. Dkt. No. 2-8. Second, the Infringing Products are so substantially similar to the patented design such that an ordinary observer would be deceived into thinking that the design of the Infringing Products is the same as the patented design, establishing a strong likelihood of infringement. *See* Dkt. No. 5-1 (exemplary claim chart). The patented design is characterized by a flat, square shaped maze toy filled with internal channels for a number of small magnetic balls corresponding with one to ten numbers, just like the Infringing Products. Third, the Design Patent is likely to withstand any validity challenges as the Design Patent enjoys a statutory presumption of validity. 35 U.S.C. § 282. Accordingly, Plaintiff has established a *prima facie* case of patent infringement, and, thus, more than a reasonable likelihood of success on the merits of this claim.

       *iii.*    *Plaintiff has demonstrated irreparable harm because there is no adequate remedy at law.*

In the context of infringement of a patent, irreparable harm occurs when the "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011). A plaintiff need only show that irreparable harm is likely in order for an injunction to be issued. *See, e.g., Plaintiffminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts tend to grant injunctive relief to patentees who compete directly with the infringer or have lost market share to the infringer. "Head-to-head competition and lost market share tend to evidence irreparable harm." *TEK Glob., S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 793 (Fed. Cir. 2019), citing *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337-38 (Fed. Cir. 2013) (competition and lost market share established irreparable harm – even where patent owner did not practice the patented invention) and *Robert Bosch LLC,* 659 F.3d at 1151 (concluding that district court erred in not finding irreparable harm when parties were direct competitors and patentee showed lost market share, even though infringement only affected patentee's "non-core" business).

In this case, in the absence of an injunction, Plaintiff will continue to suffer irreparable harm due to direct competition with the Infringing Products, loss of market share, and price erosion. For example, Plaintiff and Defendants both sell the same product through the same sales channels, namely online marketplaces like Amazon and TEMU, to reach the same consumers in the United States. This direct competition flies in the face of Plaintiff's design patent rights and has directly caused a loss of market share. For example, between the months of July 2023 to November 2023, Plaintiff's listing sold at least 34,558 units at a price of $25.99 per unit, with average daily sales of at least 300 units. Dkt. No. 5-3 at ¶ 6. From January 2024 to June 2024, the

same listing merely sold about 19,454 units, with average daily sales dropping to about 100 units. *Id*. That is a 43.7% decrease in sales within half a year. Over that same time period, Defendants entered the market at a lower price point in an effort to quickly increase sales and market share. For example, one listing of Infringing Products has a price of $9.49 per unit while another listing has a price of $9.99 per unit. *Id*. at ¶ 7. To remain competitive in the market, Plaintiff has been forced to lower prices over time. For example, in 2023, Plaintiff's price point was $25.99; today the price is set at $23.99. *Id*.

In *TEK Glob., S.R.L. v. Sealant Sys. Int'l*, the Federal Circuit upheld the district court's decision to permanently enjoin the defendant's infringement in part because the parties were competing for the same customers in the same market, the defendant won business over the plaintiff, and the plaintiff was susceptible to lowered market share due to this loss of business. 920 F.3d 777, 793 (Fed. Cir. 2019). Similarly, in *i4i Ltd. P'ship v. Microsoft Corp.*, the Federal Circuit upheld the district court's conclusion that the plaintiff was irreparably injured by the defendant's infringement based on factual findings that the parties were direct competitors in the market, and that the plaintiff lost market share as a result of the infringing products. 598 F.3d 831, 861 (Fed. Cir. 2010). Here, similar direct competition has led to a loss of Plaintiff's market share and subsequent price erosion. Dkt. No. 5-3. As articulated in *Aria Diagnostics, Inc. v. Sequenom, Inc.*: "Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." 726 F.3d 1296, 1304 (Fed. Cir. 2013). Further, the inherent difficulty of quantifying "loss of market share, brand recognition, and customer goodwill as the result of the defendant's infringing acts" and of estimating monetary damages indicates that "remedies at law are inadequate." *i4i*, 598 F.3d at 862;

Moreover, in the absence of an injunction, Defendants' infringement of the Design Patent is likely to negatively associate Plaintiff's products with Defendants' inferior products, resulting in harm to Plaintiff's reputation and loss of customer goodwill. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a Design Patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm). Here, the evidence tends to show that Defendants' copy-cat products are inferior to Plaintiff's genuine products. For example, Plaintiff's product listing enjoys a 4.5 out of 5 star customer rating on nearly 500 reviews. Dkt. No 5-3 at ¶ 5. Customer reviews of Plaintiff's product regularly praise its appearance, design concept, value, quality, style, and size. *Id.* In comparison, Defendants' listings are littered with poor customer reviews that highlight the inferior quality of the Infringing Products. *See* Dkt. No. 5-2 (collecting customer reviews of the Infringing Products).

A causal nexus exists between Defendants' infringement and the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the Design Patent in the Infringing Products is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing

feature has a large impact on demand for the products"). Here, the patented design and shape of the maze toy is the driving force behind the consumer demand.

Finally, given that Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China with no domestic presence, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"); *Peng v. The Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254 at *8 (N.D. Ill. 2021) (finding that because Defendants reside in China any monetary judgment is likely uncollectable which weighed in favor of injunctive relief). Here, similarly, because Defendants reside in China, any judgment is likely uncollectable which weighs in favor of the preliminary asset restraint sought. For these reasons, Plaintiff has and will continue to suffer immediate and irreparable injury, loss, or damage if a preliminary injunction is not issued.

    *iv.*    *Balancing of harms and the public interest favor an injunction.*

Next, the balance of harms weighs in favor of injunctive relief. As infringers, Defendants are entitled to little equitable consideration as any harm to Defendants possibly resulting from a preliminary restraint is self-inflicted. Defendants undertook a calculated risk when they engaged in Design Patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' Design Patent"). In fact,

courts have found that there is no countervailing harm to defendants from an order directing them to stop the unlawful sale of products infringing on a Design Patent. *Volkswagen AG v. iman365-usa*, 2020 U.S. Dist. LEXIS 34218, 2020 WL 977969, at *8 (N.D. Ill. Feb. 28, 2020) ("[E]njoining the Defendant[s] from violating the law cannot, by its very nature, cause the Defendant[s] any harm.").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Plaintiff has granted a license to Defendants with respect to the Design Patent. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. Further, the public interest is served by an injunction that protects Plaintiff's intellectual property rights. *John Mezzalingua Assocs., Inc. v. Arris Int'l, Inc.*, 298 F. Supp. 2d 813, 822 (N.D. Ill. 2003) ("The public interest is served by enforcing the rights of persons who have been issued patents by the United States government."). As such, equity requires that Defendants be ordered to preliminary cease their unlawful conduct.

### B. The Equitable Relief Sought Remains Appropriate.

In relief, Plaintiff seeks a preliminary injunction enjoining Defendants from making, using, selling, offering for sale, and/or importing the Infringing Products. Furthermore, Plaintiff seeks an asset freeze to ensure the availability of permanent monetary relief given the likelihood that Defendants will simply transfer their infringement related assets in an attempt to evade any judgment against them entered by this Court. Such relief is explicitly authorized under 28 U.S.C. § 283, and was previously granted in the TRO.

### i. The sale restraint is appropriate.

To prevent the Defendants from further making, using, offering for sale, selling, and/or importing the Infringing Products, Plaintiff respectfully requests that the injunctive relief already awarded be extended through the pendency of this case. A preliminary injunction is necessary to enjoin Defendants from continuing to violate Plaintiff's Design Patent rights and causing irreparable harm during the pendency of this action.

### ii. The asset restraint is appropriate.

Plaintiff requests a preliminary restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from the sale of Infringing Products is not impaired. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its design patent infringement claim, so according to 35 U.S.C. § 289, Plaintiff is entitled to recover "the extent of [Defendants'] total profit." Plaintiff seeks, among other relief, that Defendants account for and pay all profits realized Defendants' unlawful acts. Dkt. No. 1 at ¶ 23. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve equitable relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co.* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892,

at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.* Such is the case here.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

## VI.    CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court enter a Preliminary Injunction enjoining Defendants from further infringement and extending the asset restraint granted in the TRO.

DATED: January 2, 2025

Respectfully submitted,

By: */s/ Nicholas Najera*

Nicholas Najera
Texas Bar No. 24127049
nnajera@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*COUNSEL FOR PLAINTIFF*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2025, I served the foregoing document on the Defendants via email. Counsel of record was also served with a copy via the ECF filing system. I further served the foregoing on all Defendants via electronic mail.

*/s/ Nicholas Najera*

Nicholas Najera