IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJIAN MINGTA TOYS CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 1:24-cv-05625-JRB-HKM <br><br> **Honorable Judge John Robert Blakey** <br> **Magistrate Judge Heather K. McShain** <br><br> HEARING DATE: February 12, 2025 <br> HEARING TIME: 11:00 AM CST |

**DEFENDANTS SUNTOPDIRECT AND TOPBRIGHT'S
MOTION TO ENFORCE SETTLEMENT AND RECOVER FEES INCURRED
IN ENFORCING THE SETTLEMENT**

Defendants Zhejiangaoguangwanjuyouxianzerengongsi dba TOPBRIGHT ("TOPBRIGHT") and Ningbo Sun Top Trade Co. Ltd. dba SuntopDirect ("SuntopDirect", collectively the "Defendants"), by and through their attorneys Bayramoglu Law Offices LLC ("BLO"), hereby move this Honorable Court to enforce the settlement agreement Defendants entered into with Plaintiff FUJIAN MINGTA TOYS CO. LTD. ("Plaintiff") in the above captioned case and to order Plaintiff to pay all reasonable attorneys' fees Defendants incur in briefing this motion.

## I. INTRODUCTION

Despite Plaintiff and Defendants confirming in writing their definitive agreement to settle all claims against Defendants in this action, Plaintiff is now attempting to renege and refuses to dismiss its claims unless Defendants pay more than three times the previously agreed upon amount. Defendants respectfully request that this Court enforce Plaintiff's settlement agreements with Defendants and dismiss all claims against Defendants with prejudice. In addition,

Defendants should not be required to bear the costs that Plaintiff's bad faith conduct is precipitating. Plaintiff offered settlement amounts to Defendants, which were accepted. After one round of revisions, Plaintiff sent to Defendants finalized settlement agreements, which were executed without changes by the Defendants. In spite of Plaintiff making both the offer for the general terms of the agreement, which were subsequently accepted by Defendants, and Plaintiff providing the finalized settlement agreements, which were subsequently accepted by Defendants, Plaintiff now wishes to renegotiate the terms of settlement after having buyer's remorse.

## II. RELEVANT LITIGATION BACKGROUND AND SETTLEMENT

Plaintiff filed the instant action on July 3, 2024, alleging infringement of a U.S. Design Patent and a U.S. Copyright owned by Plaintiff by Defendants and many unrelated parties. Dkt. 1. Based upon the allegations in the Complaint this Court issued a Temporary Restraining Order ("TRO") on December 10, 2024, with an expiration date of December 24, 2024. Dkt. 10. The Court later extended the TRO an additional 14 days, to January 7, 2025. Dkt. 16. The TRO was later converted to a Preliminary Injunction. Dkt. 32.

Defendants engaged BLO to represent them regarding the instant action. Through their attorneys, Defendants reached out to Plaintiff on December 20, 2024. Exh. A at p. 19. After a phone conversation between counsel for Defendants and Plaintiff, the first settlement offer was made by Defendants on December 30, 2024. Exh. A at p. 16. Plaintiff and Defendants both countered one time each before Plaintiff made an offer for settlement that was accepted by Defendants on January 4, 2025. Exh. A at p. 14. Plaintiff provided settlement agreements to Defendants on January 8, 2025. Exh. A at p. 12.

Defendants provided revisions to the Settlement Agreements to Plaintiff on January 9, 2025. Exh. A at p. 11. Plaintiff accepted the revisions to the settlement agreements and sent final

clean copies to Defendants for signature on January 13, 2025. Exh. A at p. 10-11; Exh. B and C. Defendants returned executed copies of the settlement agreements on January 14, 2025. Exh. A at p. 9; See Also Exh. D and E. After Defendants expressed interest in paying the agreed upon fee for settlement to obtain dismissal from the case (and preliminary injunction) quickly, Plaintiff reiterated that the signature on the settlement agreement by Plaintiff is just a formality and the fee could be paid prior to receiving the fully executed agreement to receive dismissal more quickly. Exh. A at p. 9 (stating "I just forwarded it to China for signature today. The signature is just a formality. If your client is comfortable to wire the funds, I can move forward with the dismissal once received.").

SUNTOPDIRECT paid its settlement amount to Plaintiff on January 20, 2025. Exh. F; See also Exh. A at p. 5. TOPBRIGHT was unable to pay its settlement amount without first receiving the fully executed settlement agreement. Exh. A at p. 5. Plaintiff did not respond substantively to requests for an update on execution of the settlement agreement by Plaintiff and requests for a meet and confer regarding this settlement agreement until January 29, 2025. Exh. A at p. 1-5.

During the time when Plaintiff was unresponsive to Defendants regarding execution of the settlement agreement by Plaintiff, an affiliate of BLO located in Xiamen, China, contacted counsel for Plaintiff seeking assistance with obtaining execution of the settlement agreements. Exh. G ¶ 8-9. This affiliate of BLO, Ms. Wenjun Li, was told by counsel for Plaintiff that Plaintiff was now seeking to receive more than three times the amount to be paid by Defendants according to the settlement agreements in order to release Defendants from the instant case. Exh. G ¶ 10.

///

///

### III. ARGUMENT

#### A. Legal Standards

A district court has "the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995); *see also Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). Federal courts enforce settlement agreements by reference to state contract law. An agreement to settle claims in federal court is enforceable "just like any other contract" pursuant to the applicable state law. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007); *see also Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (stating "State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements"). Under Illinois law, an enforceable contract has three elements that must result from a meeting of the minds: offer, acceptance, and consideration. The elements of a valid and enforceable contract under Illinois law include "offer, acceptance, and consideration." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) (citing *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 830 N.E.2d 619, 624, 294 Ill. Dec. 207 (Ill. App. Ct. 2005)).

#### B. Plaintiff and Defendants Agreed to Settle the Claims Alleged in this Action at least as early as January 13, 2025

Plaintiff cannot plausibly dispute the basic facts surrounding the formation of the settlement agreement. In particular, after discussion with Plaintiff, counsel for the Plaintiff offered to settle the case for a specific amount for each of the Defendants on January 4, 2025. Exh. A at p. 14. Defendants accepted the settlement offer on January 7, 2025. *Id*. This alone was offer and acceptance and the promises to pay the amounts stated would count as consideration. Mutual binding promises can by themselves provide adequate consideration under Illinois law. *See Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 28 (1st Dist. 2005) ("A mutual

promise to arbitrate would be sufficient consideration to support an independent arbitration agreement.").

Even if Plaintiff would argue that the details were not fully agreed and therefore there was no agreement, Defendants provided marked up settlement agreements with all terms desired by Defendants on January 9, 2025. Exh. A at p. 11. Plaintiff provided final settlement agreements to Defendants with all of Defendants' desired change accepted by Plaintiff on January 13, 2025. Exh. A at p. 10-11. This was a full offer, acceptance and consideration as required under Illinois Law. *See Hanus v. Harting, Inc. of N. Am.*, 2024 U.S. Dist. LEXIS 215075, *12 (citing V*assilkovska,* 358 Ill. App. 3d 20, 28).

With respect to intent, Illinois law dictates that the parties' objective actions determine the intent to be bound, "rather than their subjective mental processes[.]" *Beverly v. Abbott Labs*., 817 F.3d 328, 333 (7th Cir. 2016) (citing *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008); *Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 522 N.E.2d 758, 764 (Ill. App. Ct. 1988) ("The paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement.")). Under this objective theory of intent, whether the parties came to an enforceable agreement "is determined not by their actual subjective intent, but by what they expressed to each other in their writings," such that "informal writings between parties can constitute a binding settlement agreement unless the parties decide to expressly condition their deal on the signing of a formal document." *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387-88 (7th Cir. 1999) (citing *Empro Mfg. Co. v. Ball-Co Mfg., Inc*., 870 F.2d 423, 425 (7th Cir. 1989)). This means that in Illinois, "email exchanges can constitute a binding agreement." *Conway v. Done Rite Recovery Servs.*, 2016 U.S. Dist. LEXIS 159439 at *3 (citation and internal quotation omitted).

Here, while the email exchange between counsel for the Parties on January 7 and 9 could constitute settlement, the Parties went further and drafted complete settlement agreements that express all conditions of settlement, then exchanged the agreements between counsel, Defendants signed the agreement, and Counsel for Plaintiff exchanged a confirmation that execution of the agreements was not a requirement for the settlement agreements to be binding and enforceable. Accordingly, all objective actions and statements between the Parties indicate that the settlement agreements are valid and binding.

### C. The Court Should Require Plaintiff to Reimburse Defendants for the Fees They Incurs in this Motion Practice

In many cases where parties seek to enforce settlements the response involves identifying reasons the district court should not enforce the settlement that reflect misapprehension on the part of clients or genuine disagreement about the terms reached. This case does not fall into those categories. Rather, this dispute surrounds the Plaintiff's desire to increase the amount paid for settlement after a full, binding settlement agreement has been reached. Defendants have no interest in revisiting the settlement because Plaintiff may have buyer's remorse. Defendants have confirmed that they will fulfill the material terms of the agreement, and SuntopDirect has already done so.

Federal courts have the inherent power to impose sanctions against a party for "litigation misconduct" where a party has acted in bad faith by, "*inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order."[5] *See Fitzhugh v. AB McDonough's, Inc.*, No. CV 416-113, 2017 U.S. Dist. LEXIS 33983, at *7-8 (S.D. Ga. Mar. 9, 2017) (awarding fees incurred in enforcing a settlement and stating "[i]t is clear from the evidence before the Court that the only reason for Defendants' refusal to execute these documents was to coerce Plaintiff to acquiesce to their attempts to renegotiate the terms of the otherwise finalized settlement

agreement. Indeed, despite the parties having settled this case twice over, Defendants attempted to force a more-favorable third version through obstinacy. Plaintiff called their bluff, however, and was forced to expend further fees to put an end to Defendants' gamesmanship."); *citing Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009); *see also Thermolife International, LLC v. D.P.S. Nutrition, Inc.,* No. 15-273, 2015 U.S. Dist. LEXIS 183157, at *24 (W.D. Pa. Dec. 15, 2015) (awarding attorneys' fees to the movant seeking to enforce a settlement and stating "Under these circumstances, [the respondent's] belated denial that a settlement had been reached is not only vexing at best but appears to be disingenuous. The Court therefore finds that [the movants] are appropriately reimbursed for the attorneys' fees and costs that they incurred by having to seek enforcement the settlement that had clearly been reached.") Here, Plaintiff's conduct mirrors the disingenuous tactics the attorneys employed in the *Thermolife* and *Fitzhugh* cases.

Counsel should not be permitted to impose costs on Defendants without a plausible legal justification for avoiding the settlement and certainly not to leverage motion practice to gain more from the settlement. As such, Endeavor should be awarded its fees pursuant to 28 USC § 1927 and this Court's inherent authority to manage litigation by imposing sanctions.

### IV.    CONCLUSION

Defendants request that this Court enforce the settlement agreement by dismissing the claims Plaintiff alleges against Defendants in the Complaint with prejudice and awarding Defendants the fees they incurred for submission of a petition for the same.

DATED: January 31, 2025

Respectfully submitted,

By: */s/ William R. Brees*
William R. Brees (Florida Bar No. 98886)
**BAYRAMOGLU LAW OFFICES LLC**

1540 West Warm Springs Road Ste. 100
Henderson, NV 89014
Tel: (702) 462-5973 | Fax: (702) 553-3404
william@bayramoglu-legal.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: */s/ William R. Brees*
William R. Brees (Florida Bar No. 98886)
**BAYRAMOGLU LAW OFFICES LLC**
